# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIJAH PASCHELKE,<br>BOP #05698-298,<br><br>                              Plaintiff,<br><br>vs.<br><br>WILLIAM KOLENDER, San Diego<br>County Sheriff; JOHN DOE, San Diego<br>County Psychiatric Unit Officer<br><br>                              Defendants. | Civil No.   09cv2191 IEG (CAB)<br><br>**ORDER GRANTING DEFENDANTS'**<br>**MOTION FOR SUMMARY**<br>**JUDGMENT PURSUANT TO**<br>**FED.R.CIV.P. 56**<br><br>**[ECF No. 45]** |

## I.

### STATEMENT OF THE CASE

Elijah Paschelke ("Plaintiff"), a federal prisoner currently housed at the Federal Correctional Institution located in Adelanto, California, is proceeding pro se and *in forma pauperis* with an action filed pursuant to the Civil Rights Act, 42 U.S.C. § 1983. Currently pending before the Court is Defendants' William Kolender and County of San Diego's Motion for Summary Judgment pursuant to FED.R.CIV.P. 56 [ECF No. 45].[1]

---

[1] While this case was randomly referred upon filing to the Honorable Cathy Ann Bencivengo, United States Magistrate Judge, for disposition pursuant to 28 U.S.C. § 636(b)(1)(B), the Court has determined that a Report and Recommendation regarding the disposition of the current pending Motion [ECF No. 73] is unnecessary. *See* S. D. CAL. CIVLR 72.3(a).

## II.

## PROCEDURAL BACKGROUND

Defendants Former San Diego County Sheriff William Kolender and County of San Diego are moving for summary judgment on all of Plaintiff's claims pursuant to FED.R.CIV.P. 56. On February 28, 2011, the Court advised Plaintiff of his rights and obligations to oppose Defendants' Motion pursuant to *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988) and *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998) (en banc).[2] Plaintiff later sought, and received, an extension of time to file an Opposition to Defendants' Motion. Plaintiff filed his Opposition [ECF No. 50] to which Defendants have filed their Reply [ECF No. 51].

Having now exercised its discretion to consider the matter as submitted on the papers without oral argument pursuant to S.D. CAL. CIVLR 7.1.d.1, the Court hereby **GRANTS** Defendants' Motion for Summary Judgment pursuant to FED.R.CIV.P. 56 for the reasons set forth in detail below.

## III.

## FACTUAL ALLEGATIONS[3]

Plaintiff was first held at the San Diego Central Detention Facility ("SDCDF") on or about September 7, 2007. (*See* FAC at 9.) Soon after Plaintiff's arrival, he was issued a "chrono" for a walking cane, as well a "chrono" to be housed in a lower tier and lower bunk. (*Id.*) Plaintiff alleges that at the time he was housed at SDCDF he was suffering from back

---

[2] *Klingele* and *Rand* together require the district court "'as a bare minimum, [to provide a pro se prisoner] with fair notice of the requirements of the summary judgment rule.'" *Klingele*, 849 F.2d at 411 (quoting *Hudson v. Hardy*, 412 F.2d 1091, 1094 (D.C. Cir. 1968)). "It would not be realistic to impute to a prison inmate ... an instinctual awareness that the purpose of a motion for summary judgment is to head off a full-scale trial by conducting a trial in miniature, on affidavits, so that not submitting counter affidavits is the equivalent of not presenting any evidence at trial." *Jacobsen v. Filler*, 790 F.2d 1362, 1364 n.4 (9th Cir. 1986) (internal quotation omitted). Actual knowledge or any level of legal sophistication does not obviate the need for judicial explanation. *Klingele*, 849 F.2d at 411-12. Thus, the district court is required to "tell the prisoner about his 'right to file counter-affidavits or other responsive materials and [to][ alert[] [him] to the fact that his failure to so respond might result in the entry of summary judgment against him.'" *Jacobsen*, 790 F.2d at 1365 n.8 (quoting *Klingele*, 849 F.2d at 411).

[3] These factual allegations are taken from Plaintiff's First Amended Complaint [ECF No. 6]. To the extent that Defendants add additional facts or dispute the facts set forth by Plaintiff, the Court will address those facts in the analysis set forth below.

injuries related to a car accident including pain from a "pinched sciatic nerve." (*Id.*) Medical staff prescribed medication to be taken twice daily for the pain, along with psychiatric medication. (*Id.*) However, after Plaintiff left the medical facility and returned to his housing unit, Defendant John Doe[4] "confiscated the walking cane" and informed Plaintiff that "institutional policy does not allow inmates to have canes" while housed in the psychiatric unit. (*Id.* at 9-10.) This Defendant also failed to provide Plaintiff with a lower bunk and Plaintiff was also later moved to an upper tier. (*Id.* at 10.)

Plaintiff submitted an "inmate request" for the return of his cane but was informed that he could not have a cane until he moved to another unit. (*Id.*) Plaintiff continued to ask the "Unit Officer" several times to move to another unit so he could have his cane back. (*Id.*) On October 7, 2007, Plaintiff was "walking up a flight of stairs in order to get to his holding cell and suddenly felt a sharp stabing [sic] pain." (*Id.* at 9.) Plaintiff's back "gave out" which caused him to fall down a flight of stairs. (*Id.*) Plaintiff was taken by ambulance to the hospital where an MRI and C.T. scans were performed. (*Id.*). These tests "revealed that [Plaintiff] suffered a fractured neck and compounded back injuries" from the fall. (*Id.*)

After Plaintiff's return from the hospital, he was given his walking cane back and "moved to the hospital unit of SDCDF on a lower tier, and lower bunk, as initially prescribed" by medical staff. (*Id.* at 10.) Plaintiff was then transferred to the George Bailey Detention Facility "where follow-up treatments for neck and back injuries were performed." (*Id.*)

## IV.

### DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**A.     Standard of Review**

Summary judgment is properly granted when "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that

---

[4] Plaintiff names John Doe, a "psychiatric unit officer." as a Defendant but he has never identified this person by name or with any other identifying factors. Moreover, Plaintiff has never moved to substitute the true name for "John Doe."

party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The court shall consider all admissible affidavits and supplemental documents submitted on a motion for summary judgment. *See Connick v. Teachers Ins. & Annuity Ass'n*, 784 F.2d 1018, 1020 (9th Cir. 1986).

The moving party has the initial burden of demonstrating that summary judgment is proper. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 152 (1970). However, to avoid summary judgment, the nonmovant cannot rest solely on conclusory allegations. *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986). Rather, he must present "specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The Court may not weigh evidence or make credibility determinations on a motion for summary judgment. Quite the opposite, the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *Id.* at 255; *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The nonmovant's evidence need only be such that a "fair minded jury could return a verdict for [him] on the evidence presented." *Anderson*, 477 U.S. at 255. However, in determining whether the nonmovant has met his burden, the Court must consider the evidentiary burden imposed upon him by the applicable substantive law. *Id.*

A verified complaint or motion may be used as an opposing affidavit under FED.R.CIV.P. 56 to the extent it is based on personal knowledge and sets forth specific facts admissible in evidence. *McElyea v. Babbitt*, 833 F.2d 196, 197-98 (9th Cir. 1987) (per curiam) (complaint); *Johnson v. Meltzer*, 134 F.3d 1393, 1399-1400 (9th Cir. 1998) (motion). To "verify" a complaint, the plaintiff must swear or affirm that the facts in the complaint are true "under the pains and penalties of perjury." *Schroeder v. McDonald*, 55 F.3d 454, 460 n.10 (9th Cir. 1995).

**B.    42 U.S.C. § 1983**

Section 1983 authorizes a "suit in equity, or other proper proceeding for redress" against any person who, under color of state law, "subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution." *Nelson v. Campbell*, 541 U.S. 637, 124 S.Ct. 2117, 2122 (2004).

/ / /

### C. Exhaustion of Administrative Remedies

Defendants first move for summary judgment on the grounds that Plaintiff failed to exhaust his available administrative remedies prior to bringing this suit as required by 42 U.S.C. § 1997e. It is well established that non-exhaustion of administrative remedies as set forth in 42 U.S.C. § 1997e(a) is an affirmative defense which defendant jail officials have the burden of raising and proving. *See Jones v. Bock,* 594 U.S. 199, 216 (2007); *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003).

The Prison Litigation Reform Act ("PLRA") amended 42 U.S.C. § 1997e(a) to provide that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "Once within the discretion of the district court, exhaustion in cases covered by § 1997e(a) is now mandatory." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). 42 U.S.C. § 1997e(a) has been construed broadly to "afford [ ] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case, *id.* at 525-26, and to encompass inmate suits about both general circumstances and particular episodes of prison life--including incidents of alleged excessive force. *Id.* at 532. Finally, "[t]he 'available' 'remed[y]' must be 'exhausted' before a complaint under § 1983 may be entertained," "regardless of the relief offered through administrative procedures." *Booth v. Churner*, 532 U.S. 731, 738, 741 (2001); *see also McKinney v. Carey*, 311 F.3d 1198, 1200-01 (9th Cir. 2002) (finding that prisoner's civil rights action must be dismissed without prejudice unless prisoner exhausted available administrative remedies *before* he filed suit, even if he fully exhausts while the suit is pending).

The County of San Diego Sheriff's Department Detention Services provides inmates the right to administratively appeal any issue related to "any condition of confinement." (*See* Defs. Ex. E, Policy and Procedure, § N.1, grievance procedure.) In order to exhaust available administrative remedies within this system, an inmate must proceed through the following levels: (1) informal resolution, (2) formal written appeal on J-22 Inmate Grievance forms or other

1  writing materials, (3) second level appeal to Grievance Review officer, (3) third level of appeal
2  to Facility Commander. (*Id.*)

3  Defendants contend Plaintiff failed to properly exhaust his administrative remedies prior
4  to bringing this suit. In support of Defendants' Motion, they maintain that Plaintiff only
5  submitted an "inmate request" that pertained to the claims that are contained in his First
6  Amended Complaint. In this "inmate request," which Defendants concede is adequate for the
7  first stage of the grievance process, Plaintiff indicates that his walking cane was confiscated and
8  claims that he needs his cane to "get back and forth from court and doctors apts." (Decl. of
9  Rodrick Smith at ¶ 11; Ex. D, Inmate Request by Plaintiff dated September 11, 2007.) The
10 response by jail staff stated that Plaintiff's cane was confiscated because he was housed on the
11 psychiatric floor which did not permit him to have his cane. (*Id.*) Rodrick Smith further
12 indicates in his Declaration that Plaintiff did not appeal the medical staff's response. (Smith
13 Decl. at ¶ 13). Plaintiff offers no rebuttal to this showing by Defendants other than to say that
14 he submitted grievances that were not responded to by jail officials. (*See* FAC at 11.) Plaintiff
15 offers no documentation to support his claims that he submitted any grievances other than the
16 one addressed above. Plaintiff, in fact, concedes that he failed to appeal his grievances. In his
17 response to interrogatories propounded by Defendants, Plaintiff states that he made the
18 "appropriate steps as they were explained to me by the staff, which was to start with an inmate
19 request stating my issue so the matter could be dealt with on an informal level." (*See* Defs. Ex.
20 F, Pl.'s Responses to Special Interrogatories, No. 13.) Plaintiff then states he was told that he
21 "simply couldn't possess the case on that floor, so I saw nothing else to do." (*Id.*)

22 The Supreme Court has made clear that Plaintiff must "properly exhaust" his
23 administrative remedies before filing a prison conditions action. In *Woodford v. Ngo*, 548 U.S.
24 81, 91 (2006), the Supreme Court held that "[p]roper exhaustion demands compliance with an
25 agency's deadlines and other critical procedural rules because no adjudicative system can
26 function effectively without imposing some orderly structure on the course of its proceedings."
27 *Woodford*, 548 U.S. at 91. The Court further held that "[proper exhaustion] means ... a prisoner
28

must complete the administrative review process in accordance with the applicable procedural rules ... as a precondition to bring suit in federal court." *Id.*

Plaintiff has failed to rebut Defendants' showing that he failed to properly exhaust his administrative grievances prior to bringing this action. In fact, Plaintiff has conceded that he has failed to exhaust his administrative remedies. *See Wyatt*, 315 F.3d at 1120 (A prisoner's concession that he failed to exhaust administrative remedies pursuant to 42 U.S.C. § 1997e(a) is a valid ground for dismissal.) Thus, the Court **GRANTS** Defendants' Motion for Summary Judgment as to all of Plaintiff's claims for failing to exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a).

### D. Claims against Defendant Kolender and County of San Diego

#### 1. Claims against Defendant Kolender in his individual capacity

Defendant Kolender, former Sheriff for the County of San Diego, seeks summary judgment of the claims against him in his individual capacity. Specifically, Defendant Kolender argues that there is "no evidence that he was personally involved in causing any violation of Plaintiff's constitutional rights." (*See* Defs.' Memo. of P's & A's at 12.) "A plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998). A person deprives another of a constitutional right under section 1983, where that person "'does an affirmative act, participates in another's affirmative acts, or omits to perform an act which [that person] is legally required to do that causes the deprivation of which complaint is made.'" *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). The "requisite causal connection can be established not only by some kind of direct personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." *Id.* at 743-44. There is no respondeat superior liability under § 1983; therefore, a supervisor, like Kolender, may be held liable for the constitutional violations of his subordinates deputies only if he "participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

Here, Plaintiff claims that as the Sheriff, Kolender has the sole authority to "take charge of and be the sole and exclusive authority to keep the county jail and the prisoners in it." (FAC at 15.) Plaintiff does not offer any argument or evidence to contradict the declaration of William Kolender in which Kolender states that he has "never received any specific information concerning [Plaintiff] or any correspondence from or about him" prior to the filing of this lawsuit. (Declaration of William B. Kolender at ¶ 3.) Plaintiff simply does not refute this nor does Plaintiff provide any evidence that would indicate that he ever made Defendant Kolender aware of his complaints.

For these reasons, the Court finds that Sheriff Kolender is entitled to summary judgment as to all Plaintiff's claims for damages in his individual capacity.

### 2. Claims against County of San Diego and Kolender in his official capacity

Plaintiff also seeks to hold the County of San Diego and Sheriff Kolender liable in his official capacity for implementing a policy that would not permit him to keep his walking cane while he was housed in the jail's psychiatric unit. However, Defendants argue that Plaintiff has presented no evidence of an unconstitutional policy. Defendants must show that no triable issues of fact exist to show that the County's policies amounted to "deliberate indifference" to Plaintiff's constitutional rights and were the "moving force" behind any violation. *See Van Ort v. Estate of Stanewich*, 92 F.3d 831, 835 (9th Cir. 1996); *Board of County Commissioners of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 402-04 (1997).[5]

Under *Monell v. Dept. of Social Services*, 436 U.S. 658 (1978), a local governmental entity may be sued under § 1983 if four conditions are alleged: (1) the plaintiff "possessed a constitutional right of which he was deprived;" (2) the municipality had a policy; (3) the policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) the policy was

---

[5] As the Court stated in its June 23, 3010 Order, when a claim is made against a government official in their official capacity, the claim is treated as one against the public entity which in this case is the County of San Diego. *Kentucky v. Graham*, 473 U.S. 159 (1985). "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. *Id.* at 166 (citations omitted.) Thus, the claims against Defendant Kolender in his official capacity and the claims against the County of San Diego will be treated the same for the purposes of this motion.

the "moving force" behind or cause of the constitutional violation. *Dietrich v. John Ascuaga's Nugget*, 548 F.3d 892, 900 (9th Cir. 2008) (citing *Van Ort*, 92 F.3d at 835).

First, Plaintiff maintains that his constitutional rights were violated by Defendants use of a policy which he claims violated his right to adequate medical care. Claims alleging a failure to provide medical care to pre-trial detainees, such as Plaintiff, are required to be analyzed as a denial of substantive due process under the Fourteenth Amendment and not under the Eighth Amendment. *Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979) ("Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions. . . . [and] the State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law."); *Gibson v. County of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002) ("Because [petitioner] had not been convicted of a crime, but only arrested, his rights derive from the due process clause rather than the Eighth Amendment's protection against cruel and unusual punishment."). However, "[w]ith regard to medical needs, the due process clause imposes, *at a minimum*, the same duty the Eighth Amendment imposes: 'persons in custody ha(ve) the established right not to have officials remain deliberately indifferent to their serious medical needs.'" *Gibson*, 290 F.3d at 1187 (emphasis added), quoting *Carnell v. Grimm*, 74 F.3d 977, 979 (9th Cir. 1996).[6]

"Prisoners can establish an Eighth Amendment violation with respect to medical care if they can demonstrate there has been deliberate indifference to their serious medical needs." *Hunt v. Dental Dep't*, 865 F.2d 198, 200 (9th Cir. 1989) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). A "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 104. "The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that

---

[6] Defendants do not challenge Plaintiff's status as a pretrial detainee. The Court will first analyze Plaintiff's substantive due process claim under traditional Eighth Amendment principles, and then consider whether the result would be different if a standard greater than that required by the Eighth Amendment applied.

significantly affects an individuals's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a 'serious' need for medical treatment." *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992), *overruled on other grounds by WMX Technologies, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997).

"Prison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment." *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002) (internal quotation marks omitted). Deliberate indifference requires allegation of facts sufficient to demonstrate that a prison official acted with a culpable state of mind. *Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991). "Under the Eighth Amendment's standard of deliberate indifference, a person is liable for denying a prisoner needed medical care only if the person 'knows of and disregards an excessive risk to inmate health and safety.'" *Gibson*, 290 F.3d at 1187-88, quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

The indifference to medical needs also must be substantial; inadequate treatment due to malpractice, or even gross negligence, does not amount to a constitutional violation. *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990); *see also Estelle*, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.") Moreover, a mere delay in medical treatment, without a showing of resulting harm, is insufficient to support an Eighth Amendment violation. *Wood*, 900 F.2d at 1335; *Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985).

In this case, Plaintiff makes claims that he was denied the use of a walking cane and jail officials refused to honor a "chrono" that provided he should have been housed in a lower bunk and lower tier. As a result of these alleged failures, Plaintiff fell and suffered injuries. Defendants supply Plaintiff's medical records while housed at SDCDF and the declaration of James Dunford, M.D. who is the physician contracted with the County of San Diego Sheriff's Department to provide medical services in the San Diego County Jail system. (*See* Def.s' Ex. D, Plaintiff's Medical records; Declaration of James Dunford, M.D.). Plaintiff does not dispute or challenge the admission of this evidence. Dr. Dunford declares that he personally examined Plaintiff on September 7, 2007. (*See* Dunford Decl. at ¶ 6.) He further declares that Plaintiff

complained of lower back pain, requested a prescription for Oxycontin and noted that Plaintiff walked with a limp. (*Id.* at ¶¶ 9-10.) Dr. Dunford prescribed medication for Plaintiff, including Oxycontin, but found that the use of a cane was not a medical necessity. (*Id.* at ¶¶ 13, 19.) Moreover, Dr. Dunford "did not make a recommendation to the Sheriff's Department that [Plaintiff] was in any way disabled or should be placed in medical housing." (*Id.* at ¶ 17.)

It is undisputed that Plaintiff fell as he was climbing stairs on October 7, 2007. (*See* FAC at 9; *see also* Def.s' Memo. of P's & A's at 5.) However, there is no evidence in the record to support Plaintiff's claim that his fall could be directly related to his inability to have the use of a walking cane while housed in the psychiatric unit. Moreover, Plaintiff provides no evidence or testimony to contradict Dr. Dunford's medical opinion that Plaintiff was not disabled. Thus, the Court finds that Plaintiff offers no evidence to support that the policy prohibiting the use a walking cane while housed in the psychiatric unit was unconstitutional. Nor is there any evidence in the record to support the argument that this policy was promulgated or enforced by Sheriff Kolender with deliberate indifference to Plaintiff's constitutional rights or that it was the cause or 'moving force' behind any Eighth or Fourteenth Amendment violation by any individual deputy. *See Monell*, 436 U.S. at 694; *Brown,* 520 U.S. at 405 (noting that "[w]here a plaintiff claims that the municipality has not directly inflicted injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable for the actions of its employee.").

Thus, the Court finds no genuine issues of material facts exist to support a municipal liability claim against either Sheriff Kolender in his official capacity or the County of San Diego. For these reasons, Defendants Kolender and the County of San Diego are entitled to summary judgment as a matter of law pursuant to FED.R.CIV.P. 56.

## V.

### CONCLUSION AND ORDER

For all the foregoing reasons, IT IS HEREBY ORDERED that:

Defendants' Motion for Summary Judgment [ECF No. 45] for failing to exhaust administrative remedies pursuant to FED.R.CIV.P. 56 is **GRANTED**.

1 | Defendants' William Kolender and County of San Diego's Motion for Summary Judgment [ECF No. 45] as to all the claims against them is **GRANTED.**

The Clerk of Court shall enter judgment for Defendants Kolender and the County of San Diego and close the file.

**DATED: May 19, 2011**

_____
**IRMA E. GONZALEZ, Chief Judge**
**United States District Court**